| | |
|---|---|
| HAMILTON MEMORIAL HOSPITAL DISTRICT, AN ILLINOIS GOVERNMENTAL MUNICIPALITY an Illinois corporation, | ) ) ) ) ) |
| Plaintiff, | ) |
| vs | ) CASE NO. 3:12-CV-01004-JPG-PMF |
| | ) |
| APRIL TOELLE AND DEACONESS HOSPITAL, INC., | ) ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| APRIL TOELLE, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| vs | ) |
| | ) |
| HAMILTON MEMORIAL HOSPITAL DISTRICT, AN ILLINOIS GOVERNMENTAL MUNICIPALITY an Illinois corporation, | ) ) ) ) |
| Counterclaim Defendant. | ) |

**MEMORANDUM IN SUPPORT OF APRIL TOELLE'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to SDIL-LR 7.1, Defendant/Counterclaimant, April Toelle, D.O. (hereinafter "Dr. Toelle"), by counsel, Paul J. Wallace and Robert W. Rock of Jones • Wallace, LLC, submits the following Brief in Support of Her Motion for Summary Judgment:

*I. INTRODUCTION*

In September 2011, Plaintiff/Counter-Defendant, Hamilton Memorial Hospital District (hereinafter "HMH"), breached its contract with Dr. Toelle. Therefore, Dr. Toelle's Motion for Summary Judgment should be granted declaring that HMH, as a matter of law, is liable to Dr.

Toelle for its breach of contract and the injuries set forth in Dr. Toelle's Counterclaim (Dkt. 48). Moreover, as a result of HMH's material breach of contract, HMH's breach of contract claim against Dr. Toelle is barred as a matter of law.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The parties signed and executed the Physician Employment Agreement on December 4, 2009.[1] *Pl. Complaint*, Count I ¶ 8 (Ex. A); Ex. 15; *Toelle Dep.* p. 83:10-12; *Dauby Dep.* pp. 155:20-24, 297:11-16, 426:8-16. HMH drafted the Physician Employment Agreement. *Dauby Dep.* pp. 19:21-24, 20:18 (Ex. 15), 332:7-15, 356:17-19; *Toelle Dep.* p. 251:13-20; *Alvarez Dep.* p. 174:11-20. HMH included integration clauses in the Physician Employment Agreement. *See Physician Employment Agreement* ¶¶ 13.3 & 13.8; *Dauby Dep.* pp. 346:17-24, 347, 348:1-20, 356:12-16. The Physician Employment Agreement with HMH provided a term of employment from August 16, 2010 until August 15, 2013. *Physician Employment Agreement* ¶ 7.1; *Toelle Dep.* pp. 23:24-25, 24:1-2.

Dr. Toelle began work for HMH on August 16, 2010. *Toelle Dep.* pp. 20:17-19, 216:22-24. Dr. Toelle's duties at HMH included the following: (1) caring for and treating patients at the clinic; (2) caring for and treating patients admitted to the hospital who did not have an admitting physician, i.e., either no physician or their physician did not have admitting privileges to HMH; (3) caring for and treating patients in HMH's Emergency Department (ER); (4) caring for and treating patients admitted to the nursing home; (5) serving as the medical director for the clinic; and (6) supervising and back-up physician for both nurse practitioners, Sharon Atwell and Tara Vogel. *Toelle Dep.* pp. 38:6-17, 39:7-25, 40:18-23, 63:7-20, 108:9-11; *Atwell Dep.* pp. 24:24,

---

[1] The "Compensation & Benefit Schedule, of July 6, 2009 (Ex. 16; Pl. Ex. 6), and the "Job Description" for a physician at HMH (Exhibit F) were not attached to the Physician Employment Agreement when Dr. Toelle signed it. *Dauby Dep.* pp. 296:14-24, 297:1-6, 298:17-21; *Toelle Dep.* pp. 104:21-22, 246:8-14, 248:3-15. Dr. Toelle did not sign the "Job Description" for a physician until after she began work at HMH. *Dauby Dep.* pp. 308:5-20; *Toelle Dep.* p. 248:3-15.

25:1-14, 38:20-21, 39, 40:1-7, 45:11-15, 45:20-24, 46:1-5; *Vogel Dep.* pp. 39:5-24, 40:1-18,

54:20-22; *Alvarez Dep.* pp. 109:12-22, 110:5-24, 111:1-3; *Dauby Dep.* p. 294:10-22.

Paragraph 5.5 of the Physician Employment Agreement provided that Dr. Toelle and Dr.

Alvarez would be paid $500.00 per month for each nurse practitioner they supervised, as

follows:

> **5.5** **Supervisor.** Physician shall be paid $500 per month for each nurse practitioner or physician assistant supervised by Physician in a primary supervision role. Supervision shall include both quality and quantity of the nurse practitioner's or physician assistant's work. During any vacancy when there is no nurse practitioner or physician assistant to supervise, this compensation will not be paid. Hospital has the final decision as to which physician is the supervising physician for each nurse practitioner or physician assistant it employs. Physician's supervisory duties shall be as set forth in Exhibit D and are subject to change as reasonably necessary.

*Physician Employment Agreement* ¶ 5.5; *Alvarez Dep.* pp. 36:21-24, 37:1-4, 38:6-18, 154:18,

156:17-24, 157:3-4, 160:8-18; *Dauby Dep.* pp. 332:22-24, 333, 334:1-9, 344:9-11, 356:20-24,

357:1-3.

Exhibit D of the Physician Employment Agreement described and defined Dr. Toelle's duties

as a supervisor for a nurse practitioner, as follows:

> Participates in joint formulation and approval of orders or guidelines with the nurse practitioner or physician assistant

> Periodically reviews orders and the services provided patients under orders in accordance with accepted standards of medical practice and advanced practice nursing practice

> Meets in person with the nurse practitioner or physician assistant to provide collaboration and consultation

> Is available through telecommunications for consultation on medical problems, complications or emergencies or patient referral

> Reviews medical records of midlevel providers in accordance with Hospital guidelines and guidelines for rural health clinics

*Physician Employment Agreement*, Ex. D.[2]

In order to receive a higher reimbursement rate and to increase its revenues from Medicaid and Medicare, HMH's clinic was required to be designated as a "Rural Health Clinic," (RHC). *Dauby Dep.* p. 403:8-18. To obtain the RHC designation HMH's clinic was required to employ a mid-level supervisor or nurse practitioner. *Dauby Dep.* p. 403:8-18. However, HMH's clinic was legally required to have the nurse practitioner supervised and directed by a physician, and the physician and the nurse practitioner were required by Illinois law to work within the framework of a "Collaborative Agreement." *Dauby Dep.* pp. 403:8-24, 404:1-9.

In August 2011, Sharon Atwell and Tara Vogel began to work as nurse practitioners at HMH. *Dauby Dep.* pp. 303:15-24, 304:1-11; *Atwell Dep.* pp. 7:3-8, 12:16-18, 56:22-24, 57:1-8; *Vogel Dep.* pp. 11:13-21, 23:11-13. Sharon worked in HMH's ER, and Tara worked in HMH's clinic. *Atwell Dep.* pp. 7:3-8, 12:16-18, 56:22-24, 57:1-8; *Vogel Dep.* pp. 11:13-21, 23:11-13. Every witness questioned about the subject unanimously agreed that, from August 2011 until August 2012, Dr. Toelle supervised Sharon Atwell, and from September 2011 until August 2011, Dr. Toelle supervised Tara Vogel. *Dauby Dep.* pp. 337:8-16, 341:8-19, 373:6-23, 385:16-24 (Ex. 31 A-L), 386:1-11, 386:20-24 (Ex. 28 A-K), 387:1-12; *Futrell Dep.* pp. 132:1-14, 132:15-19, 133:3-5; *Mitchell Dep.* pp. 120:2-6, 126:1-4 (Ex. 21 A-D), 127:3-15 (Ex. 21B), 133:11-16 (Ex. 22A), 134:13-23 (Ex. 22A); *Atwell Dep.* pp. 23:23-24, 24:1-3, 24:24, 25:1-14, 26:11-16, 41:12-24 (Ex. 28 A-K), 42, 43:1-8, 43:11-14, 45:7-15, 45:20-24, 46:1-5, 67:9-19; *Vogel Dep.* pp. 24:21-24, 25:1-6, 27:10-24, 28:1-6 (Ex. 31 A-L), 28:20-24, 29-34, 37:22-24, 38:1-3, 38:8-20; *Alvarez Dep.* pp. 47:15-20, 48:15-19, 110:19-24, 111:1-3, 134:14-24, 135:1-3, 135:21-24, 136:1-

---

[2] The language set forth in Exhibit D is identical to the language used in the Collaborative Agreement drafted by HMH for Dr. Toelle and Tara Vogel. *Dauby Dep.* p. 358:13-16.

10, 138:7-24, 139, 140 (Ex. 28 A-K), 141:1-5, 144:4-9, 154:22-24, 155:1-4; *Toelle Dep.* pp. 262:18-25, 263, 264:1-19, 264:24-25, 265:1-19 (Ex. 31 A-L).

As directed by Randy Dauby (Dauby), HMH's Chief Executive Officer, on September 6, 2011, Dr. Toelle and Tara entered into a written "Collaborative Agreement," which permitted Tara, under Illinois law, to treat patients under the direction and supervision of Dr. Toelle at HMH's clinic from September 2011 through August of 2012. *Vogel Dep.* pp. 42:14-24 (Ex. 32), 43, 44:16-19, 45:6-11, 45:21-24, 46:1-16; *Toelle Dep.* pp. 114:6-7, 257:4-25, 258:1-19; *Dauby Dep.* pp. 341:8-13, 344:22-24, 345:1-3, 349:9-12, 352:7-13, 395:9-24, 396:1-7. As mandated by Illinois law and required by the Collaborative Agreement, the following actions and procedures took place: (1) Dr. Toelle participated in the joint formulation and joint approval of orders and guidelines with Tara and periodically reviewed such orders within the accepted standards of medical practice and nurse practitioner practice; (2) Dr. Toelle was regularly present at HMH and its clinic and provided medical direction and consultation to Tara; (3) Dr. Toelle was available to Tara through telecommunications for consultation on medical problems, complications, emergencies, and patient referral; (4) Dr. Toelle and Tara consulted, either in person or by telecommunications, as needed, and usually on a daily basis; (5) Dr. Toelle periodically reviewed Tara's medication orders; and (6) Dr. Toelle had to approve Tara's and Sharon's prescriptions for Class II controlled substances. *The Illinois Nurse Practice Act* (225 Ill. Comp. Stat. Ann. 65/65-35 (West)); *Vogel Dep.* pp. 42:14-24 (Ex. 32), 46:23-24, 47:1-7, 47:9-17, 47:19-24, 48:1-8, 48:21-24, 49:1, 49:6-14, 50:1-8; *Toelle Dep.* pp. 18:20-24, 19:1-14 (Ex. 53), 255:2-25 (Pl. Ex. 5; Ex. 15), 256, 257, 260:9-17 (Ex. 53); *Alvarez Dep.* p. 158:17-20; *Dauby Dep.* pp. 352:20-24, 253:1-6.

There is no dispute that Dr. Toelle complied with the Collaborative Agreement: When Dr. Toelle and Tara were scheduled to work together in the clinic, Tara regularly came to Dr. Toelle for the following assistance and guidance: (1) for advice and guidance regarding the treatment of patients; (2) for assistance in formulating treatment plans and treatment orders for patients; (3) for collaboration and consultation regarding the treatment for specific patients seen by Tara; (4) Dr. Toelle provided guidelines for the treatment of patients; (5) Dr. Toelle periodically reviewed Tara's treatment orders, charts and the services she provided to patients; (6) in addition, there were times when Tara contacted Dr. Toelle, when Dr. Toelle was away from the clinic, for help and consultation regarding a specific patient and the treatment for that patient; and (7) Dr. Toelle's oversight and review was performed in accordance with accepted standards of medical practice and advanced nursing practices. *Vogel Dep.* pp. 34:24, 35:1-24, 36:1-9; *Alvarez Dep.* p. 158:17-20; *Dauby Dep.* pp. 352:20-24, 353:1-6, 389:4-17.

Likewise, as Sharon Atwell's supervising and back-up physician, Dr. Toelle performed the following actions and tasks: (1) she consulted with Sharon; (2) she provided advice to Sharon; (3) she assisted Sharon by formulating treatment plans, treatment and orders for patients; (4) she assisted Sharon in the ER; (5) she provided guidelines for patient treatment; (6) she reviewed and signed off on Sharon's patient's charts; and (7) she periodically reviewed Sharon's treatment orders and the services she provided to patients according to accepted standards of medical practice and advanced practice nursing. *Atwell Dep.* pp. 22:13-23, 26:17-24, 27:1-11, 42:21-24, 43:1-2, 43:18-24, 44, 45:1-6, 76:1-11; *Toelle Dep.* p. 259:12-25; *Dauby Dep.* pp. 352:20-24, 353:1-6, 389:4-17.

Dr. Toelle took time from her shift and her work responsibilities to provide guidance and consultation to the nurse practitioners. *Atwell Dep.* p. 46:6-16; *Toelle Dep.* pp. 110:24, 264:20-

23; *Dauby Dep.* pp. 388:23-24, 389:1-3.  As Sharon's and Tara' supervising and back-up physician, Dr. Toelle was medically and legally responsible for the care and treatment of each patient seen by Sharon and Tara.  *Atwell Dep.* pp. 71:16-22, 72:2-12; *Toelle Dep.* p. 110:23-24; *Alvarez Dep.* pp. 44:7-9, 136:24, 137:1-5, 158:12-16; *Dauby Dep.* pp. 349:24, 350:1-12.  As Sharon's back-up or supervising physician, Dr. Toelle was readily available to consult with Sharon.  *Atwell Dep.* pp. 50:21-24, 51:1-9, 74:23-24, 75:1-17.  When Dr. Toelle was not scheduled as Sharon's back-up or supervising physician, there were times when Dr. Toelle provided guidance to Sharon for the care of HMH patients.  *Atwell Dep.* p. 76:12-20; *Toelle Dep.* p. 264:8-19.  Between Dr. Toelle and Dr. Alvarez, Tara was supervised more by Dr. Toelle.  *Vogel Dep.* p. 55:3-5.  In fact, Dr. Toelle supervised Tara eighty percent (80%) of the time as compared to the amount of direction and supervision she received from Dr. Alvarez.  *Vogel Dep.* p. 55:6-13; *Toelle Dep.* pp. 110:22-23, 114:7-9, 265:23-25, 266:1-8; *Alvarez Dep.* pp. 137:13-24, 138:1-6.

Every witness questioned about the subject – including Dr. Toelle, Dr. Alvarez, Sharon Atwell, Tara Vogel, and even Dauby, HMH's CEO – unanimously agreed that HMH never instructed Sharon Atwell or Tara Vogel that Dr. Toelle was not their supervising physician or not to consult with Dr. Toelle regarding patient care, charts, or medical questions.  *Dauby Dep.* pp. 357:5-24, 358:1, 364:2-6, 364:20-24, 365:1, 387:24, 388:1-3; *Atwell Dep.* p. 45:16-19; *Vogel Dep.* pp. 38:4-7, 60:2-10; *Alvarez Dep.* p. 141:6-22.  In fact, HMH never exercised an option or provision of the contract where it designated or chose between Dr. Toelle and Dr. Alvarez as who would be the supervising physician for Sharon Atwell and Tara Vogel.  *Alvarez Dep.* p. 143:16-24.

Despite their supervisory duties for the nurse practitioners, neither Dr. Toelle nor Dr. Alvarez were properly paid for supervising the mid-level supervisors pursuant to the Physician Employment Agreement (Dr. Alvarez's contract was identical to Dr. Toelle's): In September 2011 (and again in March of 2012), Dr. Toelle contacted Dauby and asked why she had not received the proper compensation for supervising the nurse practitioners. *Toelle Dep.* pp. 109:6-10, 114:12-14, 116:5-16; *Alvarez Dep.* pp. 39:2-3, 40:9-11; *Dauby Dep.* pp. 334:17-24, 335:3-4, 365:6-18, 415:3-14. HMH's Chief Financial Officer Kent Mitchell admitted that Dr. Toelle was entitled to be paid for supervising Sharon Atwell for the twelve (12) month period from September 2011 through August 2012. *Mitchell Dep.* pp. 127:16-24, 134:13-24 (Ex. 22A), 135:1-15 (Ex. 22B), 135:16-24 (Ex. 22C), 136:1-24 (Ex. 22D), 137:1-11 (Ex. 22E), 137:12-24 (Ex. 22F), 138:1-8 (Ex. 22F), 138:9-22 (Ex. 22G), 138:23-24, 139:1-7, 180:1-13, 181, 182:1-7; *Atwell Dep.* p. 26:11-16; *Toelle Dep.* pp. 254:21-25, 255:1; *Alvarez Dep.* p. 141:1-5. Dr. Toelle should have been paid $1,000.00 per month (September 2011 through August 2012) when she was supervising both Sharon Atwell and Tara Vogel. *Physician Employment Agreement* ¶ 5.5; *Alvarez Dep.* p. 145:3-9.

Dauby responded by claiming that Dr. Toelle could not receive compensation for supervising Tara Vogel and compensation as the medical director of the clinic, i.e., she could not receive both types of compensation; and Dauby decided that since Dr. Toelle and Dr. Alvarez both supervised Sharon Atwell at different times in the ER, the nurse practitioner compensation should be divided equally between Dr. Toelle and Dr. Alvarez, i.e., $250.00 per physician per month instead of $500.00 per month as set forth in the Physician Employment Agreement. *Dauby Dep.* p. 359:13-16, 362:2-5, 415:10-14; *Toelle Dep.* pp. 109:11-15, 113:6-10, 114:15-20, 115:13-23, 227:7-10; *Alvarez Dep.* p. 40:13-15, 40:20-23. In his deposition, Dauby took the

position that HMH was not required to pay Dr. Toelle for supervising Tara Vogel in the clinic because he decided that Dr. Alvarez was Tara's "primary" supervisor. *Dauby Dep.* pp. 333:18-24, 334:1-6, 375:1-6. He also admitted in his deposition that there is no provision in the contract that provides for compensation in the amount of $250.00 per month for supervising a nurse practitioner, and he admitted that there was no provision in the contract which prohibited simultaneously paying both medical director and mid-level supervision compensation to Dr. Toelle. *Dauby Dep.* pp. 334:10-16, 359:17-21, 370:14-16, 376:12-16, 378:1-18, 379:12-18. He also conceded that there could be more than one physician designated and serving as the primary supervising physician. *Dauby Dep.* pp. 402:18-24, 403:1-7. Dauby told Dr. Toelle that she would not receive compensation for supervising Tara Vogel and that Dr. Alvarez would be paid for supervising Tara Vogel because Dr. Toelle was the clinics medical director. *Toelle Dep.* pp. 110:10-19, 114:15-20, 115:13-23; *Dauby Dep.* p. 340:12-14.

There is no provision in the Physician Employment Agreement allowing HMH to unilaterally decide to pay Dr. Toelle in this manner: Both Dr. Toelle and Dr. Alvarez disagreed with Dauby's decision regarding the amount of compensation he decided to pay Dr. Toelle and Dr. Alvarez for supervising the nurse practitioners, and neither Dr. Toelle nor Dr. Alvarez agreed to the failure to pay them per the terms of the contract. *Dauby Dep.* pp. 371:6-10, 416:4-10; *Toelle Dep.* pp. 109:16-25, 110:25, 111:1-16, 113:19-22; *Alvarez Dep.* pp. 33:6-24, 34, 37:5-14, 160:8-22. HMH acknowledged by its monthly payments of mid-level supervision compensation to Dr. Toelle that Dr. Toelle did, in fact, supervise a nurse practitioner.[3] *Dauby Dep.* p. 375:10-14; *Mitchell Dep.* p. 139:8-18. For the thirteen (13) month period from August 2011 through August 2012, HMH paid Dr. Toelle $3,250.00 for supervising Sharon Atwell. *Dauby Dep.* pp. 373:2-23,

---

[3] Dr. Toelle was paid monthly, on the first payroll of each month, for supervising Sharon Atwell. *Mitchell Dep.* pp. 120:2-6, 120:18-24, 121:1-5.

380:9-11, 381:12-13, 382:20-24, 383:1-7, 388:4-18; *Mitchell Dep.* pp. 140:19-24 (Ex. 23 A-J), 141-44 (Ex. 23 A-J), 146:22-24, 147-48, 149:1-14, 149:21-24, 150:1-17; *Toelle Dep.* pp. 252:8-25 (Ex. 23 A-J), 253 (Ex. 23 C-G), 254:1-16 (Ex. 23 H-J).  Neither Dr. Toelle nor Dr. Alvarez was paid in accordance with the terms of the Physician Employment Agreement.  *Physician Employment Agreement* ¶ 5.5; *Alvarez Dep.* pp. 38:19-21, 39:16-19, 42:8-17, 144:21-24, 145:1-9; *Mitchell Dep.* pp. 127:16-24, 134:13-24 (Ex. 22A), 135:1-15 (Ex. 22B), 135:16-24 (Ex. 22C), 136:1-24 (Ex. 22D), 137:1-11 (Ex. 22E), 137:12-24 (Ex. 22F), 138:1-8 (Ex. 22F), 138:9-22 (Ex. 22G), 138:23-24, 139:1-7, 140:19-24 (Ex. 23 A-J), 141-44 (Ex. 23 A-J), 146:22-24, 147-48, 149:1-14, 149:21-24, 150:1-17, 180:1-13, 181, 182:1-7; *Toelle Dep.* pp. 252:8-25 (Ex. 23 A-J), 253 (Ex. 23 C-G), 254:1-16 (Ex. 23 H-J), 254:21-25, 255:1, 264:24-25, 265:1-19 (Ex. 31 A-L); *Atwell Dep.* p. 26:11-16; *Vogel Dep.* pp. 27:10-24, 28:1-6 (Ex. 31 A-L), 28:20-24, 29-34, 37:22-24, 38:1-3, 38:8-20.

In May 2011, Dr. Toelle asked Dauby why she had not received any of the calculations related to incentive compensation or paid incentive compensation.  *Toelle Dep.* pp. 77:5-25, 78:1-5, 117:23-25, 118:1-3; *Alvarez Dep.* pp. 50:8-9, 133:1-5; *Dauby Dep.* pp. 319:18-24, 320:1-2.  In August 2011, Dauby told Dr. Toelle that he realized the incentive bonus plan was not effective or beneficial to Dr. Toelle.  *Toelle Dep.* pp. 81:14-25, 82:1-5.  Dauby promised that "he was going to work towards another method" so that Dr. Toelle would receive incentive compensation, but he never did anything.  *Toelle Dep.* p. 82:1-5, 82:11-24; *Dauby Dep.* p. 396:11-24.  During this same time period, Dr. Toelle's "Efficiency Bonus" was due to be paid to her; however, HMH initially paid only one-half (½) of the bonus until Dr. Toelle contacted Mitchell and Dauby to correct the error.  *Mitchell Dep.* pp. 110:4-24, 111:1-24, 112:1-16; *Toelle Dep.* pp. 80:10-25, 81:1-4, 81:19-24, 82:6-10; *Dauby Dep.* pp. 393:8-24, 394:1, 445:7-19.  With

regard to Dr. Toelle's "Incentive Bonus," Mitchell never provided any information or calculations he had performed to Dr. Toelle regarding her Incentive Bonus. *Mitchell Dep.* p. 114:12-22; *Toelle Dep.* p. 81:5-6.

Round about August 2011 to October 2011, Dr. Toelle was unhappy and began thinking about leaving HMH for Deaconess because of HMH's failure to abide by the contract. *Toelle Dep.* pp. 24:3-8, 25:15-17, 26:5-12, 124:16-25, 125:1-6; *Alvarez Dep.* p. 164:3-19. Dr. Toelle believed that HMH had breached the contract. *Toelle Dep.* pp. 127:12-25, 128:1-10, 129:10-20, 137:17-18, 145:2-6, 166:16-25, 171:4-9, 172:23-25, 173:1-11, 203:4-6, 209:21-22; *Alvarez Dep.* pp. 93:20-24, 94:1-9. Dr. Toelle sought the advice of her attorney regarding her concerns with HMH's conduct and observance of the contract and whether HMH had breached the contract. *Toelle Dep.* pp. 137:18-23, 138:25, 139:1-4, 142:19-22, 143:16-20. After Dr. Toelle met with her attorney, she decided to resign from HMH on January 9, 2012. *Toelle Dep.* pp. 144:6-13 (Pl. Ex. 18 - # I_2-000032), 232:19-22. On February 22, 2012, Dr. Toelle entered into an employment agreement with Deaconess Hospital. *Toelle Dep.* p. 161:20-25 (Pl. Ex. 19). On June 1, 2012, Dr. Toelle gave notice to HMH that she was resigning and she planned to work for HMH until September 1, 2012. *Toelle Dep.* pp. 26:18-22, 27:8-12 (Pl. Ex. 1), 160:18-22; *Pl. Complaint* (Ex. B); *Dauby Dep.* p. 21:10-21. Dr. Toelle began working for Deaconess Hospital on October 1, 2012. *Toelle Dep.* pp. 162:2-4, 243:25, 244:1-3.

## III. ARGUMENT

### A. STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202

(1986); and *CSFM Corp. v. Elbert & McKee Co.*, 870 F.Supp. 841, 850 (N.D. Ill. 1994) (summary judgment is particularly appropriate in cases involving the interpretation of contractual documents). "A genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Peele v. Burch*, __ _____ F.3d _____, 2013 WL 3455705 (7th Cir. 2013).

### B.  DR. TOELLE'S BREACH OF CONTRACT CLAIM

"It is the function of the courts to enforce lawful contracts and to protect contractual rights, and they will not aid or countenance a disregard of obligations entered into under the same." *O'Donnell v. Snowden & McSweeney Co.*, 237 Ill. App. 156, 164-65 (Ill. App. Ct. 1925).  In seeking to obtain summary judgment in a contract action a plaintiff "must demonstrate the absence of any material fact on the elements of offer, acceptance, consideration, the terms of the contract, plaintiff's performance, defendant's breach of the terms of the contract and damage resulting from that breach." *Independent Machinery, Inc. v. Kuehne & Nagel, Inc.*, 867 F.Supp. 752, 762 (N.D. Ill. 1994); and *Intervisual Communications, Inc. v. Volkert*, 975 F.Supp. 1092, 1099 (N.D. Ill. 1997).  "To state a cause of action for breach of contract, a complainant must allege the existence of a contract, performance of its conditions by complainant, a breach by the defendant, and damages as the result of the breach." *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill.App.3d 1010, 1019, 826 N.E.2d 1160, 1168, 292 Ill.Dec. 724, 732 (2005).

There is no dispute that the parties entered into an integrated contract, the Physician Employment Agreement, at issue herein, on December 4, 2009.  There is no dispute that Dr. Toelle performed her contractual obligations from her first day of employment until her departure.  There is no dispute that Dr. Toelle supervised HMH's two nurse practitioners -

Sharon Atwell from August 2011 until August 2012 and Tara Vogel from September 2011 until August 2012. There is no dispute that HMH was contractually bound to pay Dr. Toelle $500.00 per month for each nurse practitioner supervised by her. There is no dispute that there could be more than one physician designated and serving as the primary supervising physician. There is no dispute that HMH paid Dr. Toelle $3,250.00 for supervising Sharon Atwell from August 2011 until August 2012. There is no dispute that paragraph 5.5 of the Physician Employment Agreement provided that HMH was contractually bound to pay Dr. Toelle $6,500.00 for supervising Sharon Atwell from August 2011 until August 2012. There is no dispute that Dr. Toelle suffered damages by HMH's failure to fully compensate her for the supervision of Sharon Atwell in the amount of $3,250.00.

The only dispute, with regard to mid-level supervision compensation, is a legal dispute regarding whether Dr. Toelle was entitled to be paid for supervising Tara Vogel. HMH argues that the last prepositional phrase of the first sentence of paragraph 5.5 – "in a primary supervision role" – emphasizes that HMH had the choice of which physician was the supervising physician. HMH concludes, without factual or legal support, that it could deny the compensation it contractually promised to Dr. Toelle, even if she was supervising Tara Vogel, simply by claiming that she was not the primary supervising physician. The answer to whether Dr. Toelle was entitled to mid-level supervision compensation and whether she was a primary supervising physician requires analysis of paragraph 5.5. The supervisory duties for the physician are set forth in Exhibit D to the Physician Employment Agreement. If Dr. Toelle was performing the supervisory duties set forth in Exhibit D to the contract, with HMH's knowledge, consent or direction, then she was a primary supervising physician entitled to mid-level supervision compensation as promised and guaranteed by paragraph 5.5.

Paragraph 5.5 unambiguously guarantees that Dr. Toelle would be paid $500.00 per month for each nurse practitioner she supervised. Per this provision, HMH had the election and opportunity to assign the physician of its choice as the supervising physician for a particular nurse practitioner. In order to determine whether Dr. Toelle was entitled to be paid for supervising Tara Vogel two issues must be reviewed: (1) whether HMH chose a physician or physicians to supervise Tara Vogel, and if so, who was the physician or physicians?; and (2) whether Dr. Toelle supervised Tara Vogel as prescribed in Exhibit D to the Physician Employment Agreement?

In contract actions, summary judgment is particularly appropriate to resolve disputes involving the interpretation of unambiguous contracts. *Illinois Bell Tel. Co. v. Reuben H. Donnelley Corp.*, 595 F. Supp. 1192, 1196 (N.D. Ill. 1984). "If the language in the contract is clear and unambiguous, the judge must determine the intention of the parties 'solely from the plain language of the contract and may not consider extrinsic evidence outside the 'four corners' of the document itself.'" *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (2000) (quoting *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34, 628 N.E.2d 1165, 1168 (1993)). Clear and unambiguous terms of a contract must be given their plain, ordinary and natural meaning, and contracts must be interpreted, as a whole, giving meaning and effect to each provision of the contract. *Id.* Evidence outside the four corners of a contract will not be considered in construing an unambiguous contract, and where an integration clause is included in a contract, the parties have indicated that the contract shall be interpreted solely from the contract language itself. *Id.* at 151-52; *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464, 706 N.E.2d 882, 885 (1999) (where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to

protect themselves against misinterpretations which might arise from extrinsic evidence); and

*Clarendon Am. Ins. Co. v. 69 W. Washington Mgmt. LLC*, 374 Ill. App. 3d 580, 589, 870 N.E.2d 978, 987 (2007) (there is a strong presumption against provisions that easily could have been included in the contract but were not). "[W]here the terms of a contract are clear and unambiguous, they must be enforced as written, and no court can rewrite a contract to provide a better bargain to suit one of the parties." *Owens v. McDermott, Will & Emery*, *supra*, 736 N.E.2d at 154. *See also Flora Bank & Trust v. Czyzewski*, 222 Ill. App. 3d 382, 388, 583 N.E.2d 720, 725 (1991) (contracts are construed to give effect to the intention of the parties; and if there is no ambiguity in the terms of the contract, then the intention of the parties is found in the language of the contract alone). However, if an ambiguity is found, it is construed strictly against the drafter of the contract. *Id.*; and *Cedar Park Cemetery Ass'n v. Vill. of Calumet Park*, 398 Ill. 324, 333, 75 N.E.2d 874, 879 (1947). *See also Hurd v. Illinois Bell Tel. Co.*, 136 F. Supp. 125, 134 (N.D. Ill. 1955) *aff'd*, 234 F.2d 942 (7th Cir. 1956) (according to the doctrine of "contra proferentem," where there is doubt as to which of several possible meanings is to be given to words of a contract, the words should be construed most strongly against the party who chose them). But a contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms. *Flora Bank & Trust v. Czyzewski*, *supra*, 583 N.E.2d at 725.

### 1. *HMH Chose Dr. Toelle to Supervise Tara Vogel*

HMH never exercised any provision of paragraph 5.5 to choose between Dr. Toelle and Dr. Alvarez as the supervising physician for Tara Vogel. There is no dispute that HMH never instructed Dr. Toelle or Tara Vogel that Dr. Toelle was not to supervise or consult with Tara regarding patient care, charts, or medical questions. In fact, HMH did the opposite. As soon as Tara Vogel started in the clinic, Dauby had Tara and Dr. Toelle sign a Collaborative Agreement

so Dr. Toelle could supervise Tara in compliance with Illinois law. It is undisputed that Dr. Toelle supervised Tara eighty percent (80%) of the time from September 2011 until August 2012. There is no dispute that Dr. Toelle supervised Tara in accordance with the terms and provisions of the Collaborative Agreement and in accordance with the duties of a supervisor as defined in Exhibit D. Dr. Toelle was medically and legally responsible for the care and treatment of each patient seen by Tara. HMH has conceded that more than one physician could serve as the primary supervising physician for a nurse practitioner.

When HMH failed to pay Dr. Toelle for supervising Tara, Dr. Toelle objected and told Dauby that she should be paid as required by paragraph 5.5. Even at that time, Dauby did not relieve Dr. Toelle of her duties as a supervisor for Tara. He chose to breach the contract by not paying Dr. Toelle and required Dr. Toelle to continue to serve in this capacity without payment. Paragraph 5.5 does not permit HMH to require Dr. Toelle to supervise a nurse practitioner but not pay her for this service simply by claiming that she is not the primary supervising physician. The undisputed facts clearly demonstrate that HMH, with full knowledge, designated and accepted Dr. Toelle as a supervising physician for Tara Vogel.

## 2. Dr. Toelle Supervised Tara Vogel
### According to Paragraph 5.5 of the Physician Employment Agreement

HMH's focus and argument that the last prepositional phrase of the first sentence of paragraph 5.5 – "in a primary supervision role" – permits it to deny Dr. Toelle compensation for supervising Tara simply by claiming that Dr. Alvarez was the primary supervising physician for Tara, misconstrues and corrupts the facts and the contract language at issue and results in a breach of the contract. First, HMH has conceded that more than one physician can serve as a primary supervising physician (it conceded that both Dr. Toelle and Dr. Alvarez were primary supervising physicians for Sharon Atwell). Second, as discussed in the previous section, HMH

clearly chose and accepted Dr. Toelle as Tara's supervising physician and received the benefit of her services, including the RHC designation. HMH cannot have the benefit of the contract without accepting the obligations imposed by paragraph 5.5. *See Indus. Loan & Trust Co. v. Bell*, 300 Ill. App. 502, 507-08, 21 N.E.2d 638, 640 (Ill. App. Ct. 1939) (one cannot have the benefits of a contract without taking therewith the obligations imposed by that contract).

Third, paragraph 5.5 does not permit HMH to require Dr. Toelle to supervise a nurse practitioner but not pay her for this service simply by claiming that she is not the primary supervising physician. HMH's construction of the contract language is incorrect. HMH uses the preposition, at issue, to misconstrue and nullify paragraph 5.5 in its entirety. A court's primary objective in construing a contract is to ascertain and give effect to the intent of the parties. *Intersport, Inc. v. Nat'l Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 319, 885 N.E.2d 532, 538 (2008). Paragraph 5.5 clearly shows that the parties intended that Dr. Toelle would be compensated for supervising nurse practitioners. HMH construction and reliance on "primary" further violates the rules for construction of contracts because, according to the "last antecedent clause" rule of construction, a grammatical rule of construction in the construction of contracts, a qualifying phrase is to be confined to the last antecedent. *Dix Mut. Ins. Co. v. LaFramboise*, 149 Ill. 2d 314, 322, 597 N.E.2d 622, 626 (1992); and *Storybook Homes, Inc. v. Carlson*, 19 Ill. App. 3d 579, 583, 312 N.E.2d 27, 30 (1974). Therefore, "in a primary supervision role" is confined to Physician in the first sentence of paragraph 5.5 and cannot be amplified or emphasized to set aside the parties intent to pay compensation for supervision of nurse practitioners.

Fourth, a provision in a contract that arguably gives one party to the contract the power to settle disputes in its favor are generally not favored. *Hurd v. Illinois Bell Tel. Co.*, *supra*, 136 F. Supp. at 154-55. The proferred interpretation of HMH, not only defeats the intent of the parties

at the time they entered the contract, it gives HMH the unilateral power to deny compensation which has been earned by Dr. Toelle. For this reason as well, HMH's interpretation violates the rules of construction.

Finally, the proper focus in order to interpret paragraph 5.5 is to determine whether Dr. Toelle, in fact, supervised a nurse practitioner. If she did, then she is entitled to be compensated. Paragraph 5.5 defines the duties of a supervisor in Exhibit D, which clearly tracts and is modeled after the language set forth in the Collaborative Agreement which tracts the language set forth in the Illinois Nurse Practice Act (225 Ill. Comp. Stat. Ann. 65/65-35 (West). There is no dispute that Dr. Toelle supervised Tara in accordance with Exhibit D and the Collaborative Agreement. Therefore, Dr. Toelle was entitled to be paid $500.00 per month for supervising Tara for twelve (12) months, from September 2011 until August 2012. Dr. Toelle should have received $6,000.00 for supervising Tara during this period of time. By its undisputed failure to pay this compensation, HMH has breached the contract.

## C. THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT (820 ILCS 115/ET SEQ.)

The undisputed evidence is that HMH failed to pay Dr. Toelle $9,250.00 in compensation for supervising Sharon Atwell ($3,250.00) and Tara Vogel ($6,000.00). In addition to any other legal or contractual remedies, the Illinois Wage Payment and Collection Act provides a remedy for employees to bring a civil action against their employer for unpaid compensation. *820 Ill. Comp. Stat. Ann. 115/14 (West).* Wages are defined "as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." *820 Ill. Comp. Stat. Ann. 115/2 (West).* In addition to the unpaid compensation, Dr. Toelle is entitled to damages of 2% of the amount of the underpaid or unpaid compensation for each month following the date the compensation was due. *820 Ill. Comp. Stat. Ann. 115/14 (West).* In the

case of the underpayment of Dr. Toelle's compensation related to Sharon Atwell, Dr. Toelle is

entitled to 2% damages in the amount of $1,105.00.[4]  In the case of the underpayment of Dr.

Toelle's compensation related to Tara Vogel, Dr. Toelle is entitled to 2% damages in the amount

of $1,980.00. Therefore, Dr. Toelle is entitled to recover and respectfully requests judgment

against HMH in the amount of $12,335.00, her reasonable attorney fees[5], and the costs of this

action.

### D.  HMH'S BREACH OF CONTRACT CLAIM AGAINST DR. TOELLE IS BARRED BY ITS MATERIAL BREACH OF THE CONTRACT

Because HMH materially breached the Physician Employment Agreement by its failure to

compensate Dr. Toelle, it cannot recover on its breach of contract claim against Dr. Toelle

wherein it alleged that Dr. Toelle breached the contract by failing to remain an employee of

HMH through the term of the contract.  A party cannot have the benefits of a contract unless he

has also performed the obligations of the contract.  *Nation Oil Co. v. R. C. Davoust Co.*, *supra*,

201 N.E.2d at 266; and *Kobus v. Jefferson Ice Co.*, 2 Ill. App. 3d 458, 460, 276 N.E.2d 725, 727

(Ill. App. Ct. 1971).  The undisputed failure of HMH to compensate Dr. Toelle is a material

breach of the Physician Employment Agreement.  *See Watson v. Auburn Iron Works, Inc.*, 23 Ill.

App. 3d 265, 269, 318 N.E.2d 508, 511 (Ill. App. Ct. 1974) (a party's failure to make

compensation payments under a contract is properly viewed as a material breach of the contract).

Because of this breach, HMH can no longer enforce the terms of the contract against Dr. Toelle.

*See Sheridan v. James W. Rouse & Co., Inc.*, 109 Ill. App. 3d 841, 847, 441 N.E.2d 647, 651

(1982) (where a party to a contract fails to comply with the terms and provisions of the contract,

---

[4] There were thirteen months of underpaid compensation August 2011 until August 2012). The first underpayment per the statute was calculated from September 2011. There are twenty-three months since this underpayment through July 2013. The calculation is $250.00 x .02 x # of months unpaid till July 2013.
[5] *820 Ill. Comp. Stat. Ann. 115/14 (West).*

the other party to the contract is justified and relieved from performing under the contract). These maxims hold true in the employer-employee relationship: When an employer refuses to pay an employee compensation agreed to in the parties contract of employment, the employee is entitled and permitted to leave the service of the employer before the term of employment has expired, and the employee is entitled to recover the compensation that was due him under the contract. *Dunn v. Crichfield*, 214 Ill. 292, 301, 73 N.E. 386, 390 (1905). Therefore, Dr. Toelle respectfully requests that judgment be entered against HMH on its Complaint and breach of contract claim against her, and for the costs of this action.

## IV. CONCLUSION

Based on the foregoing arguments, there are no genuine issues of material fact, and Dr. April Toelle is entitled to judgment as a matter of law. Dr. April Toelle respectfully requests that judgment be entered against HMH and in favor of Dr. Toelle on HMH's Complaint (Dkt. 2); that judgment be entered in favor of Dr. Toelle on her Counterclaim (Dkt. 48) against HMH in the amount of $12,335.00 (through the month of July 2013), and for her reasonable attorney fees, pursuant to 820 Ill. Comp. Stat. Ann. 115/14; for the costs of this action to be taxed to HMH; and for all other appropriate relief in the premises.

Respectfully Submitted,

JONES • WALLACE, LLC

/s/ Paul J. Wallace
Paul J. Wallace, # 989-82
pwallace@joneswallace.com

/s/ Robert W. Rock
Robert W. Rock, # 14060-48
rrock@joneswallace.com

Attorneys for Defendant, April Toelle

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading or paper has been filed with the Court through the Court's electronic filing system, and served upon the following persons electronically through the Court's electronic filing system on this 18th day of July, 2013.

A. Courtney Cox, Esq.
Sandberg Phoenix & von Gontard, P.C.
ccox@sandbergphoenix.com

Thomas E. Berry, Jr., Esq.
Sandberg Phoenix & von Gontard, P.C.
tberry@sandbergphoenix.com

Diane R. Poshard, Esq.
Sandberg Phoenix & von Gontard, P.C.
dposhard@sandbergphoenix.com

Mark A. McAnulty, Esq.
Kahn, Dees, Donovan, & Kahn, LLP
mmcanulty@kddk.com

Jon Goldman, Esq.
Kahn, Dees, Donovan & Kahn, LLP
jgoldman@kddk.com

 /s/ Robert Rock
Robert W. Rock